UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
Nouhou Conde,

          Plaintiff,

      - against -

United States of America, United States
Postal Service, and Jamal M. Abdus-Sabur,

          Defendants.
----------------------------------------X

**MEMORANDUM AND ORDER**

19 Civ. 8506 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiff Nouhou Conde ("plaintiff") commenced this action on September 12, 2019 to recover damages for personal injuries purportedly sustained during an accident with a United States Postal Service ("USPS") truck on 113th Street and Lenox Avenue in Manhattan on November 10, 2018.[1] The Government[2] moves for summary judgment on the ground that plaintiff's injuries were not "serious injuries" within the meaning of the Comprehensive Motor Vehicle

---

[1] Plaintiff also sought recompense for damage to his vehicle. This claim is not the subject of the instant motions.

[2] This decision will use "the Government" to refer to the United States of America. Plaintiff's complaint also asserts claims against USPS and USPS employee Jamal Abdus-Sabur. However, pursuant to the Federal Tort Claims Act ("FTCA"), "[t]he remedy against the United States provided by sections 1346(b) and 2672 of this title for injury . . . arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive[.]" 28 U.S.C. § 2769(b)(1). The Government thus moves to dismiss Mr. Abdus-Sabur and the USPS as defendants. Plaintiff does not oppose this application. As "[t]he only proper defendant to a tort claim under the FTCA is the United States," Skyers v. Sommer, No. 12 Civ. 3432, 2016 WL 4484241, at *7 (S.D.N.Y. Aug. 23, 2016), Mr. Abdus-Sabur and the USPS are dismissed as defendants.

Insurance Reparations Act (i.e., New York's "No-Fault Law") and on the further ground that plaintiff's injuries were not proximately caused by the subject accident.   The Government also moves to exclude the proposed testimony of plaintiff's expert, Dr. Mark McMahon ("Dr. McMahon"), pursuant to Federal Rule of Evidence ("FRE") 702.   For the reasons discussed herein, we grant the Government's summary judgment motion on the proximate cause prong and its motion to exclude, but deny its motion for summary judgment on the question of whether plaintiff suffered a "serious injury."

I. **Background**[3]

    **A. Accident**

This case arises from an accident that occurred on 113th Street and Lenox Avenue in Manhattan on the morning of November 10, 2018. Pl.'s Rule 56.1 ¶ 2;[4]  Police Accident Report, ECF No. 26-5. Plaintiff, a 52-year-old rideshare driver for Juno, proceeded down the one-way street and observed a USPS truck on the right side of

---

[3] The following facts are drawn from Defendant's Rule 56.1 Statement ("Def.'s Rule 56.1"), ECF No. 25; Plaintiff's Response to Defendant's Rule 56.1 Statement ("Pl.'s Rule 56.1"), ECF No. 31; the Declaration of Zachary Bannon in Support of Defendant's Motion to Dismiss and exhibits thereto, ECF No. 26; the Declaration of Gregory C. McMahon in Opposition to the Motion for Summary Judgment, ECF No. 30; Defendants' Memorandum of Law in Support of Defendants' Motion to Exclude the Testimony of Dr. Mark McMahon and for Summary Judgment, ECF No. 23; Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Exclude the Testimony of Dr. Mark McMahon and for Summary Judgment ("Opp."), ECF No. 28; and Reply Memorandum of Law in Support of Defendants' Motion to Exclude the Testimony of Dr. Mark McMahon and for Summary Judgment ("Reply"), ECF No. 32.

[4] Although the Government brought the instant motions, we cite to Plaintiff's Response to Defendant's Rule 56.1 Statement, ECF No. 31, as many of the facts of the case are undisputed.

the road.  Pl.'s Rule 56.1 ¶¶ 2-3.  Though certain circumstances of the accident are disputed, the parties agree that the USPS truck was not moving when plaintiff approached it from behind.  Id. ¶¶ 4-5.  As the USPS driver testified, when plaintiff approached, he was stopped and waiting on the street for another driver to leave a spot so that he could park.  Deposition of Jamal M. Abdus-Sabur, ECF No. 26-2, at 15:23-16:3.  Moreover, as plaintiff explained to the Fire Department team who responded to the accident, the accident occurred when he was "squeezing through a tight spot in his vehicle causing his front passenger door to get caught on the truck's bumper," and that he was moving at approximately five miles per hour.  Pl.'s Rule 56.1 ¶ 19 (citing the FDNY's Prehospital Care Report Summary, included in Harlem Hospital Records, ECF No. 26-7, at HARLEM00025).[5]  The impact of the accident resulted in damage to the USPS truck's bumper, as well as damage to the passenger side doors of plaintiff's van.  Id. ¶ 6; ECF Nos. 26-11, 26-12 (photographs of vehicles post incident).

After the police arrived, they took statements from plaintiff and the USPS driver.  Pl.'s Rule 56.1 ¶¶ 11-12.  Plaintiff informed a police officer that he was not feeling well, and the officer called an ambulance.  Id. ¶ 14.  When the ambulance arrived, plaintiff was found "walking around," and plaintiff stepped into

---

[5] Plaintiff later testified that he was driving 20 miles per hour.  Id. ¶ 19.

3

the ambulance with the assistance of medical technicians, who took him to Harlem Hospital Center.  Id. ¶ 15; Harlem Hospital Records, ECF No. 26-7, at HARLEM00025.

**B. Medical Treatment**

Harlem Hospital Center staff evaluated plaintiff within approximately an hour of his arrival.  Pl.'s Rule 56.1 ¶¶ 20-21. The staff's notes reflect that plaintiff denied hitting his head[6] and explained that his back pain was a "5," presumably on a scale of 1-10.  Id. ¶ 21.  He was discharged within 90 minutes and given prescriptions for Methocarbamol, a muscle relaxant, and naproxen, an anti-inflammatory medication.  Id. ¶ 22.

Over the next thirteen months, plaintiff saw a number of doctors who reported on his medical condition.  The reports discuss range of motion and spinal issues.  The parties dispute the extent, if any, to which the accident caused these conditions, and whether these conditions are serious.

First, on November 13, 2018, three days after the accident, physiatrist Dina Nelson ("Dr. Nelson") determined that plaintiff had an impaired range of motion in his cervical and lumbar spine and moderate loss of strength in his extremities.  Id. ¶¶ 23-24. She encouraged plaintiff to refrain from "strenuous activities."

---

[6] At his deposition, taken on June 25, 2020, plaintiff ultimately testified that the force of the impact caused him to jump and hit his head on the roof of his car, and that he then turned around to see what happened, causing pain to his back.  Id. ¶ 7.

Physical Medicine & Rehabilitation of NY, P.C. Records ("PMR Records"), ECF No. 26-8, at PMR00003.  On November 28, 2018, Dr. Peter Kwan ("Dr. Kwan") performed similar tests and reached conclusions similar to Dr. Nelson's regarding plaintiff's range of motion.  Pl.'s Rule 56.1 ¶ 25.  On February 25, 2019, Dr. Angel Macagno ("Dr. Macagno") diagnosed plaintiff with lumbar radiculopathy, herniated lumbar disc, and low back pain.  Report of Dr. Macagno ("Macagno Report"), ECF No. 26-10, at 3.  Dr. Macagno recommended that plaintiff undergo spinal fusion surgery, however plaintiff declined.  Id. at 4.  On March 13, 2019, Vadim Lerman ("Dr. Lerman") assessed plaintiff and reached conclusions similar to Dr. Nelson's regarding plaintiff's range of motion and strength.  Pl.'s Rule 56.1 ¶ 31.  On December 18, 2019, Dr. Lerman again recommended a spinal fusion and decompression, which plaintiff did not pursue.  Id. ¶¶ 35, 37.

Plaintiff also underwent x-ray and MRI imaging of his cervical and lumbar spine during the thirteen months following the accident. Technicians at Lenox Hill Radiology reviewed plaintiff's November 27 and 30, 2018 x-rays and imaging ("2018 Images"), and concluded that they showed reduction in disc space between several discs, lordosis indicative of muscle spasms, several disc bulges, and several herniations.  Id. ¶ 26.  On December 5, 2019, technicians at Stand-Up MRI took another MRI ("2019 Images," and together with the 2018 Images, the "Images") and concluded that the MRI showed

several disc bulges, herniations, and spinal straightening.  Id.
¶¶ 33-34.

In the meantime, plaintiff received physical therapy between
November 2018 and April 2019.  Id. ¶ 30.  It appears that his
status improved as time went on: on November 13, 2018 and January
8, 2019, Dr. Nelson observed that plaintiff had a "temporary total
disability," and on February 12, March 19, and April 16, 2019, Dr.
Nelson reported that plaintiff had a "marked partial disability."
Id. ¶¶ 28-29.  Plaintiff testified that he does exercises for his
back at home, but that he has not seen a physician for his spinal
conditions since March 2020.  Id. ¶ 38.

**C. Dr. Charla Fischer's Expert Testimony**

Dr. Charla Fischer ("Dr. Fischer"), a professor in the
department of orthopedic surgery at New York University's
Langone's Spine Center, is the Government's expert.  Dr. Fischer
authored an Expert Report dated November 12, 2020 ("Fischer Expert
Report"), ECF No. 27-2, and also submitted the Declaration of
Charla Fischer, M.D., ("Fischer Declaration"), ECF No. 27, which
is dated February 18, 2021.  Her submissions are based on review
of plaintiff's medical records, Images, and a thorough physical
exam of plaintiff.  Plaintiff never deposed Dr. Fischer.  Tr. of
Oral Arg., Aug. 2, 2021, ECF No. 33 ("Oral Arg. Tr."), at 4:12-
14.

In her Report, Dr. Fischer details her review of the Images. From her review of studies of the 2018 Images, Dr. Fischer concluded that plaintiff has disc bulging and mild stenosis at two locations in the lumbar spine and disc degeneration at two locations, bulging in three locations, and stenosis in two locations in the cervical spine.  Pl.'s Rule 56.1 ¶ 45.  Dr. Fischer also reviewed plaintiff's 2019 Images, where she observed herniation at one location in the lumbar spine and spondylolisthesis at another.  Id.

Dr. Fischer evaluated plaintiff herself on October 20, 2020, employing a combination of subjective and objective testing.  Id. ¶¶ 39, 42, 44.  When Dr. Fischer employed tests using methodology that relied on plaintiff's subjective expression of pain, it appeared that plaintiff had a limited range of motion.  Id. ¶ 42. However, when Dr. Fischer conducted tests using objective methodology, each test returned a negative result, evincing no signs of lumbar disc herniation, cervical disc herniation, cervical myelopathy, or spinal cord compression.  Id.  ¶ 44.[7] Details of these objective tests, as well as plaintiff's results, are listed below:

- Deep Tendon Reflex Testing: When Dr. Fischer tested plaintiff's deep tendon reflexes, they were normal.

---

[7] Plaintiff disputes this statement, noting that Dr. Fischer's reading of the 2019 lumbar MRI revealed a herniated disc.  Id. ¶ 44.

- Long-Tract Sign/L'Hermitte's Sign Testing: Dr. Fischer concluded that plaintiff's reactions to this test for nerve damage, which checks for spasticity or abnormal stiffness of the muscles during normal voluntary movements, were normal.

- Hoffman Test: This test assesses whether the patient experiences involuntary contractions of the thumb and index finger when the middle finger is flicked. Plaintiff had a negative reaction, i.e., the results did not indicate an issue related to plaintiff's spine.

- Spurling Sign Test: Plaintiff had a negative, i.e., normal, reaction to this test, which determines whether there is a pinched nerve in the cervical spine.

- Clonus Test: This test, which assesses nerve damage, is performed by dorsiflexing the heel and looking for more than three involuntary beats of plantarflexion. Plaintiff did not have any clonus.

- Seated Root Tension Test: This test looks for a pinched nerve in the lumbar spine. Plaintiff had a negative, i.e., normal reaction to this test.

- Straight Leg Raising Test: This test also determines whether there is a pinched nerve in the lumbar spine. Plaintiff had negative straight leg tests on both legs.

Fischer Declaration ¶ 5.

Based on her review and examination, Dr. Fischer concluded that while plaintiff did sustain injuries to his neck and back as a result of the accident, these injuries were cervical paraspinal muscle strains that would have resolved within three to six months with appropriate physical therapy.  Pl.'s Rule 56.1 ¶ 47.  Dr. Fischer opined that a patient who suffers a paraspinal muscle strain may experience low back pain, but nevertheless generally remains able to perform activities of daily living, including driving and taking public transportation.  Fischer Decl. ¶ 7.

Dr. Fischer further concluded that the conditions visible on plaintiff's Images, including degeneration and bulging, were unrelated to the accident.  Pl.'s Rule 56.1 ¶ 46.  Instead, she explained, they are consistent with age-related chronic degeneration commonly seen in a man of plaintiff's age, as well as in over 10% of the population.  Id.  Dr. Fischer also opined that radiculopathy (which she did not diagnose in plaintiff), leg numbness, and pain — symptoms that plaintiff reportedly experienced — are all consistent with chronic spinal degeneration. Id.

### D. Dr. Mark McMahon's Expert Testimony

Dr. McMahon, plaintiff's expert, is a graduate of Harvard Medical School and is affiliated with Lenox Hill Hospital.  ECF No. 26-3.  He authored a report on behalf of plaintiff dated September 21, 2020 ("McMahon Expert Report"), Pl.'s Rule 56.1 ¶

48.    However, he did not submit a report in response to Dr. Fischer's Report, Oral Arg. Tr. at 4:15-18.  The Government deposed Dr. McMahon on December 4, 2020 ("McMahon Dep."), ECF No. 26-4.

The McMahon Expert Report provides a background section, which begins on November 10, 2018, i.e., the date of the accident. McMahon Expert Report at 1.  The "past medical history" section of the Report says "[n]egative," indicating that plaintiff had no relevant medical history.  Id. at 4.[8]

During a physical exam of plaintiff, Dr. McMahon measured plaintiff's range of motion using a series of subjective tests and observed that he had a limited range of motion.  Pl.'s Rule 56.1 ¶¶ 56-58.  Dr. McMahon performed only one potentially objective test, the bilateral leg test, which he marked as positive.  Id. ¶ 57.

Ultimately, Dr. McMahon diagnosed plaintiff with several disc herniations, bulges, and impingements of the cervical and lumbar spine, as well as radiculopathy.  Id. ¶ 59.  Dr. McMahon did not independently review plaintiff's 2018 or 2019 Images.  Rather, he copied those diagnoses verbatim from Lenox Hill's radiology studies on the 2018 Images and from electrodiagnostic testing results issued by PMR.  Id.  In a single sentence, Dr. McMahon

---

[8] This characterization of plaintiff's medical history omits testimony that plaintiff was in a car accident in 2012 and has experienced back pain for ten years.  Deposition of Plaintiff (Pl.'s Dep."), ECF No. 26-1, at 5:24-25; McMahon Dep. at 64:23-65:8.

concluded that the diagnoses occurred as a result of the accident on November 10, 2018.  Id. ¶ 60.  He further concluded that plaintiff's prognosis was poor, and that his condition was permanent.  Id. ¶ 63.

### E. Post-Accident Condition

At the time of the accident, plaintiff worked as a rideshare driver for companies such as Juno and Uber.  Id. ¶ 1.  He reported that he did not work for three months following the accident.  Id. ¶ 16.  Plaintiff also testified that he experienced pain during certain activities, including standing for 5-10 minutes, using stairs, lifting suitcases, walking distances, playing sports, playing with his daughter, and occasionally going grocery shopping.  Pl.'s Dep., ECF No. 26-1, at 18:24; 29:9-10; 76:15-77:23; 79-80.  However, plaintiff continued to walk without a cane or walker after the accident.  Id. at 78:1-3.

## II.  Procedural History

Plaintiff filed this action on September 12, 2019 against the United States of America, the USPS, and Jamal Abdus-Sabur.  ECF No. 1.  Following discovery, on February 18, 2021, the Government filed the instant motions to exclude the proposed testimony of plaintiff's expert, Dr. McMahon, pursuant to Rule 702, and for summary judgment on the grounds that plaintiff's injuries were not "serious" within the meaning of New York's No-Fault Insurance Law and that plaintiff's injuries were not proximately caused by the

subject accident.   ECF No. 22-23.   Plaintiff opposed the
Government's motions on March 19, 2021, arguing that the Government
failed to meet its burden to show that plaintiff did not have
serious injuries; that issues of fact existed with respect to the
seriousness of the injuries and causation; and that Dr. McMahon
should be permitted to testify.  ECF No. 28.  The Government filed
a reply in further support of its motions on April 2, 2021.  ECF
No. 32.

## III.  <u>Discussion</u>

At the outset, we note that the Government's success on any
one component of its motions — <u>i.e.</u>, should our conclusion be that
(i) there is no genuine dispute of material fact that plaintiff's
injuries are not serious; (ii) there is no genuine dispute of
material fact that the accident did not cause the potentially
serious injuries; or (iii) Dr. McMahon's testimony should be
excluded — will preclude plaintiff from any recovery for personal
injuries.   <u>See, e.g.,</u> <u>Rhone v. United States</u>, No. 04 Civ. 5037,
2007 WL 3340836, at *10 (S.D.N.Y. Nov. 9, 2007) ("Given the Court's
holding that there is no triable issue of fact as to whether the
Government proximately caused plaintiff's injuries, the Court need
not consider the Government's claim regarding whether [plaintiff]
can meet the serious injury threshold."); <u>Carter v. Full Serv.,</u>
<u>Inc.</u>, 815 N.Y.S.2d 41, 43 (2006) (explaining that to recover
damages for non-economic loss related to an injury sustained in an

accident, "a plaintiff is required to present competent, non-conclusory expert evidence sufficient to support" findings of seriousness and causation).  Ultimately, we agree with the Government that plaintiff has not introduced evidence raising a triable issue of fact with respect to causation and that the testimony of Dr. McMahon should be excluded.  As these conclusions foreclose the availability of recovery pursuant to New York's No-Fault Law, we only briefly address the seriousness of plaintiff's injuries.

### A. Motion for Summary Judgment

We begin with the Government's motion for summary judgment. As noted earlier, the Government moves for summary judgment with respect to two issues: (1) whether plaintiff's injuries are "serious" within the meaning of the No-Fault Insurance Law; and (2) whether the accident caused the potentially serious injuries.

#### 1. Legal Standard

##### i.    Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A fact is material when it might affect the outcome of the suit under governing law." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks omitted) (quoting Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir.

13

2005)).   A factual dispute is genuine if a reasonable factfinder could decide in the nonmoving party's favor.   Id.

At summary judgment, a court must resolve all ambiguities and draw all justifiable inferences in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).   The moving party must "make a prima facie showing that it is entitled to summary judgment." Celotex Corp. v. Catrett, 477 U.S. 317, 331 (1986).   If it does so, then there is no issue for trial unless the party opposing summary judgment presents "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249.

### ii.   New York's No-Fault Law

Pursuant to 28 U.S.C. § 1346(b), the substantive law of New York governs this case.   Plaintiff seeks recovery of damages for both economic and non-economic losses under New York's No-Fault Law.

In 1973, the New York State Legislature enacted the No-Fault Law to promote prompt resolution of vehicular injury claims while alleviating unnecessary burdens on the courts. Abdulazeez v. Depazarce, No. 17 Civ. 7415, 2020 WL 104990, at *1 n.1 (S.D.N.Y. Jan. 9, 2020).   Pursuant to the No-Fault Law, automobile owners are required to purchase automobile insurance and automobile insurers, in turn, are required to compensate the insured for up to $50,000 in losses caused by the use or operation of a motor

vehicle in New York state, regardless of fault.  Id.  In order to recover claims for personal injury losses that exceed the $50,000 threshold under the No-Fault Law, a plaintiff must present evidence (1) that his injury is "serious" and (2) that the injury was proximately caused by the accident at issue.  See N.Y. Ins. Law §§ 5101-5109; Carter, 815 N.Y.S.2d at 43.

### a. Serious Injury

Only claimants who have suffered a "serious injury" within the meaning of the No-Fault Law are permitted to file liability claims for personal injury losses that exceed the $50,000 threshold.  See N.Y. Ins. Law §§ 5101-5109.  Under the No-Fault Law, a "serious injury" is defined as a personal injury that results in:

> death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.

N.Y. Ins. Law § 5102(d).

"Whether the evidence would warrant a jury finding that a plaintiff's injury qualifies as a 'serious injury' is a threshold

legal question for the court to decide." Watson-Tobah v. Royal Moving & Storage, Inc., No. 13 Civ. 7483, 2014 WL 6865713, at *11 (S.D.N.Y. Dec. 5, 2014). Thus, a defendant moving for summary judgment in cases governed by New York's No-Fault Law "must establish a prima facie case that plaintiff did not sustain a 'serious injury' within the meaning of Insurance Law § 5102(d)." Yong Qin Luo v. Mikel, 625 F.3d 772, 777 (2d Cir. 2010) (quoting Barth v. Harris, 00 Civ. 1658, 2001 WL 736802, at *2 (S.D.N.Y. June 25, 2001)). Once a defendant has made a prima facie case that plaintiff did not sustain a "serious injury" under § 5102(d), "the plaintiff must rebut with sufficient admissible evidence to raise a genuine issue of fact as to whether the plaintiff has sustained a serious injury." Rivera v. United States, No. 10 Civ. 5767, 2012 WL 3132667, at *10 (S.D.N.Y. July 31, 2012) (citation omitted). Rather than rely solely on subjective complaints, "a plaintiff must offer objective proof of an injury." Id. "As long as the plaintiff adduces sufficient objective evidence from which a jury could find that she sustained a serious injury, summary judgment must be denied 'notwithstanding some contrary probative evidence.'" Id. (quoting Nasrallah v. Helio De, No. 96 Civ. 82727, 1998 WL 152568, at *8 (S.D.N.Y. Apr. 2, 1998)).

### b. Causation

Further, in order to recover under the No-Fault Law, "a plaintiff is required to present competent, non-conclusory expert

evidence sufficient to support a finding . . . that the injury was proximately caused by the accident at issue." <u>Carter</u>, 815 N.Y.S.2d at 43; <u>see also</u> <u>Rhone</u>, 2007 WL 3340836, at *6 (explaining that plaintiff's evidence must be competent and non-conclusory). Moreover, where a defendant presents persuasive evidence that the plaintiff's alleged pain and injuries were related to a preexisting condition, the plaintiff has "the burden to come forward with evidence addressing defendant's claimed lack of causation." <u>Pommels v. Perez</u>, 4 N.Y.3d 566, 580 (2005).  Where a plaintiff fails to rebut a defendant's prima facie showing that the plaintiff "did not sustain a serious injury as the result of the subject accident, defendant is entitled to summary judgment."  <u>Agard v. Bryant</u>, 805 N.Y.S.2d 348, 349 (2005); <u>see also</u> <u>Arenes v. Mercedes Benz Credit Corp.</u>, No. 03 Civ. 5810, 2006 WL 1517756, at *8 (E.D.N.Y. June 1, 2006) ("Even when there is objective medical proof that a plaintiff sustained a serious injury, when additional contributory factors interrupt the chain of causation between the accident and claimed injury — such as a gap in treatment, an intervening medical problem or a pre-existing condition — summary dismissal of the complaint may be appropriate.").

### 2. Analysis

#### i. Serious Injury

We first assess whether plaintiff sustained "serious injuries," which is a requirement for recovery under the No-Fault

Insurance Law.  Given our rulings in favor of the Government on the other two prongs of its motions, our discussion of this issue is less extensive.

Plaintiff argues that (i) the Government did not meet its initial burden to show that plaintiff did not suffer serious injuries, and (ii) even if the Government did carry its burden, the evidence creates triable issues of fact as to whether the accident caused the injuries and whether he suffered serious injuries under three theories set forth in N.Y. Ins. Law § 5102(d). Specifically, plaintiff argues that he suffers from: "permanent consequential limitation of use of a body organ or member" (Permanent Consequential Limitation); "significant limitation of use of a body function or system" (Significant Limitation); and "medically determined injury . . . which prevents the injured person from performing substantially all of" his customary routine for ninety of one-hundred eighty days following the injury (90/180 Injury).[9]  While we do not address each of these theories in detail,

---

[9] We provide a brief overview of the relevant law here.

To establish a serious injury based on permanent consequential limitation of use of a body organ or member, a plaintiff must "produce competent medical evidence that [his] injuries are permanent." Ventra v. United States, 121 F. Supp. 2d 326, 333 (S.D.N.Y. 2000).  Such a claim of permanence "must be supported by medical records and not based solely on plaintiff's testimony and subjective descriptions of pain." Cabrera v. United States, No. 18 Civ. 07270, 2020 WL 5992929, at *15 (S.D.N.Y. Oct. 9, 2020), appeal dismissed (Feb. 18, 2021) (citing Jones v. United States, 408 F. Supp. 2d 107, 117 (E.D.N.Y. 2006)).

"To qualify as a significant limitation, the injury must be significant in both degree and duration." Perez v. United States, No. 17 Civ. 4838, 2019 WL 2336526, at *10 (S.D.N.Y. June 2, 2019) (citation and internal quotation marks omitted).  "A 'significant' injury is one that results in 'more than a minor limitation of use.'" Bass v. Hout, No. 13 Civ. 8516, 2019 WL 6527944, at

we survey certain evidence and conclude that there are triable issues of fact regarding the seriousness of plaintiff's injuries.

### a. The Government's Evidence

At the outset, we find that the Government has made a prima facie showing that plaintiff's injuries were not serious. Yong Qin Luo, 625 F.3d at 777. First, Dr. Fischer's testimony that plaintiff's sprains would have resolved in three to six months with physical therapy detracts from a conclusion that plaintiff sustained "permanent" or "significant" injuries from the accident. Pl.'s Rule 56.1 ¶ 47. Moreover, Dr. Nelson, who examined plaintiff within days of the accident, discouraged him from engaging in "strenuous" activities, PMR Records at PMR00003, but did not otherwise intimate that plaintiff's injuries would prevent him from engaging in regular activities. Further, plaintiff himself testified that he walked without a cane or walker and continued to participate in other activities, such as grocery shopping and dressing himself, Pl.'s Rule 56.1 ¶ 17, each of which are elements of his customary routine.

---

*4 (S.D.N.Y. Dec. 4, 2019) (citing Young Sung Lee v. Garvey, 718 F. App'x 11, 15 (2d Cir. 2017)).

   To show that plaintiff has suffered a "serious injury" under the "90/180" category of the No-Fault Law, a plaintiff must show that he has been "unable to perform substantially all of [his] daily activities for not less than 90 of the 180 days immediately following the accident." Rivera, 2012 WL 3132667, at *12; see also Evans v. United States, 978 F. Supp. 2d 148, 166 (E.D.N.Y. 2013) ("[A] plaintiff must show that he was prevented from performing his usual activities to a great extent, rather than some slight curtailment for ninety of the 180 days following the accident.") (internal quotation marks omitted).

### b. Plaintiff's Evidence

As the Government made a prima facie showing that plaintiff's injuries were not serious, the burden shifts to plaintiff to introduce evidence to raise a triable issue of fact as to whether he sustained serious injuries. <u>Rivera</u>, 2012 WL 3132667, at *10. Plaintiff is partially successful in doing so.

On one hand, plaintiff's evidence does not raise a genuine dispute of material fact with respect to the Permanent Consequential Limitation category (indeed, plaintiff barely makes this argument in his opposition). To start, plaintiff does not direct the Court to any treating physician's medical report indicating that he sustained permanent injuries. Moreover, though Dr. McMahon testified that "[h]is condition is permanent," Pl.'s Rule 56.1 ¶ 63, Dr. McMahon does not support this conclusion with objective evidence, which is required to support a finding of permanence. <u>Alvarez v. E. Penn Mfg. Co.</u>, No. 10 Civ. 09541, 2012 WL 4094828, at *5 (S.D.N.Y. Sept. 17, 2012). In the absence of objective testing to support Dr. McMahon's medical conclusion, "mere repetition of the word 'permanent' in a medical report is insufficient" to create an issue of fact. <u>Id.</u>

On the other hand, plaintiff's evidence raises a genuine dispute of material fact under the Significant Limitation category. For example, plaintiff relies on, <u>inter alia</u>, studies of his 2018 and 2019 Images, which show disc bulges and

herniations, and the results of range of motion tests, which show that his range of motion was limited. Though "courts have recently begun to question findings of limitations that are based on range of motion tests that rely on subjective complaints of pain by plaintiffs," Booth v. Melville, No. 14 Civ. 7022, 2015 WL 7730931, at *11 (S.D.N.Y. Nov. 24, 2015), Dr. Nelson's reports also reflect a review of plaintiff's Images, and Dr. Kwan appears to have examined plaintiff for indications of palpitations and spasms. See, e.g., PMR Records at PMR00004, PMR00034. This evidence, together, is sufficient to raise an issue of fact. See Madden v. Lee, No. 01 Civ. 7856, 2002 WL 31398951, at *5 (S.D.N.Y. Oct. 25, 2002) (denying motion for summary judgment where "the plaintiff's doctor based his opinion regarding the neck and back limitations of the plaintiff on MRI tests and observations of spasm and limitations of range of motion in the plaintiff's back").

Plaintiff also presented evidence that his daily activity was significantly inhibited, which is sufficient to raise a genuine dispute of material fact under the 90/180 Injury category. Importantly, plaintiff testified that he did not work for three months following the accident. Pl.'s Rule 56.1 ¶ 16. Though the "fact that [plaintiff] missed more than 90 days of work is not determinative," Blake v. Portexit Corp., 893 N.Y.S.2d 28, 29–30 (2010), here plaintiff introduced medical evidence that he "remained incapacitated from working as a driver" as of February

12, 2019 – over 90 days after the accident.  PMR Records at PMR00007-8.  Moreover, plaintiff testified that he felt pain when he walked, could only "sometimes" shop for groceries, experienced difficulty lifting heavy items, and could not play sports or with his children, Pl.'s Rule 56.1 ¶ 17, each of which suggests that plaintiff's customary routine was affected.  This evidence is sufficient to survive summary judgment.

Notwithstanding our conclusion that there are triable issues of fact regarding the seriousness of plaintiff's injuries, in order to recover under New York's No-Fault Law, plaintiff also must introduce evidence showing that the accident actually caused those potentially serious injuries.  On the issue of causation, however, plaintiff falls short.

## ii. Causation

Regardless of our ruling on the "serious injury" prong, we need to address the second prong of the Government's summary judgment motion, namely, that plaintiff failed to raise a triable issue of fact as to whether the accident caused the claimed injuries.  The Government's argument is twofold: first, plaintiff's evidence with respect to causation is conclusory, and second, plaintiff fails to adequately confront the alternative explanation for plaintiff's condition, i.e., chronic degeneration. We agree with the Government in both respects, and therefore grant the Government's summary judgment motion.

### a. The Government's Evidence

The Government has presented a prima facie case that plaintiff's arguably serious injuries were not caused by the accident at issue, but instead are attributable to age-related degenerative changes.   The Government relies primarily on Dr. Fischer's Expert Report.   Perhaps given the methodology and reliability of the Fischer Expert Report, plaintiff does not dispute the sufficiency of this evidence.

Based on her review of the Images, as well as a physical exam of plaintiff, Dr. Fischer concluded that plaintiff suffered non-permanent neck and lumbar paraspinal muscle strains as a result of the accident, which would resolve within three to six months with appropriate physical therapy.  Pl.'s Rule 56.1 ¶ 47.  Dr. Fischer also opined that the arguably serious conditions reflected in plaintiff's 2018 and 2019 Images, including loss of disc height, mild bulging, and stenosis, are degenerative in nature and not attributable to the accident.   Id. ¶ 46; Fischer Decl. ¶ 8.  Dr. Fischer bases her conclusion on the fact that these conditions are not seen in patients with acute trauma, who would normally present with fractures or evidence of bleeding such as hematoma — conditions that are absent in the Images.   Fischer Decl. ¶ 8. Instead, she explained, such conditions in the cervical and lumbar spine are consistent with age-related degenerative changes seen in 10% of the population — "chronic, slowly developing degeneration

seen in all patients as gravity affects disc space." Fischer
Expert Report at 8.  Dr. Fischer also explained that these
degenerative conditions are consistent with plaintiff's purported
symptoms, including radiculopathy, leg numbness, and pain.  Pl.'s
Rule 56.1 ¶ 46.[10]

As Dr. Fischer based her Report on medical reports, imaging,
a physical exam, and her spinal expertise, Dr. Fischer's Expert
Report is sufficient to establish a prima facie case that the
accident did not cause plaintiff's potentially serious conditions,
and instead resulted from a preexisting, degenerative condition.
See, e.g., Kerr v. Klinger, 896 N.Y.S.2d 868, 868-69 (2010)
("Defendant established her prima facie entitlement to summary
judgment by submitting evidence, including the affirmed reports of
a radiologist, who, upon reviewing the MRI films taken after
plaintiff's accident, concluded that the disc bulges and/or
herniations revealed therein were the result of degenerative disc
disease and not caused by the automobile accident at issue.").

### b. Plaintiff's Evidence

As the Government has made a prima facie showing that the
accident did not cause the arguably serious injuries, the burden

---

[10] While Dr. Fischer agrees that plaintiff could benefit from lumbar spine
surgery, she does not attribute the cause of his lumbar problems or the need
for the surgery to the accident.  Fischer Expert Report at 9.

shifts to plaintiff to provide evidence to rebut that showing. Rhone, 2007 WL 3340836, at *8.

Plaintiff, however, devoted a mere one paragraph of his submission to the issue of causation, in which he argues that "[p]laintiff's treating physicians, as well as his expert, note that Mr. Conde had not suffered any similar symptoms before the accident and had no prior injuries or medical conditions that would result in the MRI findings which included herniated discs." Opp. at 15. Plaintiff further asserts in his summary letter, submitted simultaneously with his opposition papers in accordance with our Individual Practice 2(E), "[i]f Mr. Conde did not have prior neck and back problems, and now has severe neck and back problems after the collision, causation is only logical." ECF No. 29.[11]   In support of his argument, plaintiff directs the Court only to the report of Dr. Macagno, who concluded that plaintiff sustained herniated discs as a result of the motor vehicle collision. Macagno Report at 3.[12]   Since plaintiff also made a passing

---

[11] As the oral argument revealed, plaintiff was apparently unaware that his own expert testified to his ten-year history with back pain. Oral Arg. Tr. at 5:4-7; McMahon Dep. 64:23-65:8.

[12] As a general matter, "[u]ncertified medical records and unsworn letters or reports," such as the Macagno Report, "are of no probative value," Parmisani v. Grasso, 629 N.Y.S.2d 865, 872 (1995), and are considered inadmissible hearsay that are an insufficient basis for opposing a motion for summary judgment, Capobianco v. City of New York, 422 F.3d 47, 55 (2d Cir. 2005). However, "New York State courts have consistently held that a plaintiff, when opposing summary judgment, may use the unsworn reports that defendants relied on." Gualtieri v. Farina, 283 F. Supp. 2d 917, 921–22 (S.D.N.Y. 2003). In assessing plaintiff's argument, therefore, we consider the medical reports introduced by the Government. For the reasons that follow, they do not assist plaintiff's case.

reference to his expert, we note that Dr. McMahon, too, concluded that plaintiff's condition "occurred as a result of the motor vehicle accident of November 10, 2018." McMahon Expert Report at 5.

As to the Government's first argument, we agree that plaintiff's conclusory arguments and evidence are insufficient to raise a genuine dispute of material fact regarding causation. See McHaffie v. Antieri, 593 N.Y.S.2d 844, 845 (1993) ("The opinion[] expressed by the plaintiff's expert[] as to causation . . . [was] stated in wholly conclusory terms, and [is] thus without evidentiary value.").

First, plaintiff's expert, Dr. McMahon, failed to provide any sort of analysis with respect to causation. Dr. McMahon's Expert Report begins its background section on November 10, 2018, i.e., the date of the accident. McMahon Expert Report at 1. In this regard, as plaintiff conceded at oral argument, Dr. McMahon altogether ignores relevant aspects of plaintiff's medical history — such as his motor vehicle accident in 2012, which plaintiff describes as resulting in injuries to his shoulder and knee, and his back pain throughout the preceding ten years. Oral Arg. Tr. at 6:12-16; see also PMR Records at PMR00002; McMahon Dep. at 64:23-65:11. Further, Dr. McMahon did not personally review the

images that form the basis for plaintiff's diagnoses by Lenox Hill and PMR, Pl.'s Rule 56.1 ¶ 59, which calls into question Dr. McMahon's consideration of plaintiff's medical history. In the absence of full consideration of plaintiff's medical history, a conclusory statement on causation is of little value. In any event, we regard Dr. McMahon's single, unsupported sentence attesting to the cause of plaintiff's condition as particularly problematic in light of Dr. McMahon's own testimony that he renders the same opinion on causation in each of the 400 or so matters in which he is retained as an expert annually. Id. ¶ 51; McMahon Dep. 28:20-22.

Second, the other medical reports referred to by plaintiff are unreliable, as plaintiff failed to adequately disclose his medical history to the doctors that examined him. Oral Arg. Tr. at 4:19-6:9. Indeed, even plaintiff's lawyer was surprised to learn, at oral argument, that plaintiff suffered from ten years of back pain. Id. at 4:24-5:3. In turn, the treating physicians could not adequately assess whether the accident at issue caused plaintiff's injuries. For example, Dr. Macagno's report reflects that plaintiff's "chief complaint" was "[n]eck and lower back pain following motor vehicle accident November 10, 2018," and concludes, "[b]ased on the patient's history and clinical evaluation, the current problem is a work related injury that is consistent with the work injury described by the patient." Macagno

Report at 1, 3.  Yet the Macagno Report also states that plaintiff was "rear-ended" by another car on November 10, 2018, and that he denied any previous neck and lower back injuries "causing this type of pain," and as well as any medical history.  Macagno Report at 1.  Far from a comprehensive assessment as to potential causes of the injury, Dr. Macagno's report is based on background provided by plaintiff himself, in which plaintiff mischaracterized the accident and omitted crucial aspects of his actual medical history, i.e., his ten-year history with back pain.  McMahon Dep. at 64:23-65:4; see also Kang v. Romeo, No. 18 Civ. 4033, 2020 WL 4738947, at *8 (E.D.N.Y. Aug. 14, 2020) ("[A] plaintiff's self-serving and conclusory statements regarding causation are insufficient to raise a triable issue of fact if not corroborated by objective medical evidence.") (citations omitted); Montgomery v. Pena, 798 N.Y.S.2d 17, 18 (1st Dep't 2005) (granting summary judgment to defendants where treating physician's report "does not even mention the prior injuries or the preexisting conditions").[13]

---

[13] Plaintiff does not direct the Court to the specific reports of other treating physicians in his discussion on causation.  However, having reviewed them ourselves, we also regard their assessments attributing plaintiff's injuries to the instant accident as conclusory and problematic because they likewise rely on plaintiff's inaccurate portrayal of the accident and his medical history.  As we know from Dr. McMahon, plaintiff experienced back pain for ten years, McMahon Dep. 64:23-65:4, yet this is not reflected in the medical records.  See Li v. Aponte, No. 05 Civ. 6237, 2009 WL 1285928, at *7 (S.D.N.Y. May 5, 2009) (finding chiropractor's opinion unreliable where expert did not "consider[] the available data regarding plaintiff's medical condition and history").  Moreover, plaintiff's 2012 accident and resulting injuries are included in the medical reports inconsistently.  See, e.g., PMR Medical Records at PMR00001-2 (Dr. Nelson) (noting 2012 motor vehicle accident but otherwise providing that medical history is "negative"); PMR Records at PMR00032, PMR00035 (Dr. Kwan) (reporting that plaintiff explained that he "hit his head on the

We likewise agree with the Government's second argument: that plaintiff fails to provide evidence to rebut the Government's argument that the purportedly serious injuries were not caused by the accident at issue, but instead were caused by chronic degeneration.   In this respect, this case closely resembles Pommels.   There, the defendant's expert physically examined plaintiff and reviewed his medical records, and concluded that the plaintiff's injury was attributable to a degenerative condition. Pommels, 4 N.Y.3d at 579.   Instead of addressing the possibility that a degenerative condition caused the injury, the plaintiff's expert merely opined that the injury was caused by the accident. Id. at 580.   Ultimately, the Court of Appeals granted summary judgment to the defendant, holding that the plaintiff failed to come forward with evidence to show that an issue of fact existed with respect to causation.   Id.

Here, too, plaintiff fails to rebut the Government's evidence that the Images and plaintiff's purported symptoms support a finding of degeneration.   Critically, it does not appear that Dr. McMahon reviewed the evidence that Dr. Fischer used, i.e., the Images, to determine that plaintiff's condition was degenerative, nor did he substantively respond to Dr. Fischer's diagnosis at his

---

windshield" and that "[t]he patient's medical history did not reveal any pre-existing conditions that may affect the treatment and/or prognosis"); Total Orthopaedics and Sports Med BRX Records (Dr. Lerman), ECF No. 126-9, at TOSM00001 (describing 2012 accident but clarifying that "[p]atient was in normal state of health prior to accident of 11/10/2018").

deposition or in a rebuttal expert report.  Further, plaintiff
does not point to any other evidence, such as treating physicians'
reports, to rule out the alternative diagnosis that he suffers
from chronic degeneration.[14]    Thus, plaintiff has failed to
introduce evidence to show that an issue of fact exists with
respect to causation.  See Rhone, 2007 WL 3340836, at *8 ("Without
consideration of [plaintiff's] medical history and the persuasive
evidence of a degenerative condition put forth by the Government,"
the evidence introduced by plaintiff is "mere speculation.");
Agard, 805 N.Y.S.2d at 349 (granting defendant's motion for summary
judgment where "[t]he sworn medical report plaintiff submitted in
opposition failed to refute, or even to address, the opinion of
defendant's expert that the limitations of plaintiff's knees
resulted from a preexisting degenerative condition").

Indeed, far from ruling out chronic degeneration, plaintiff's
evidence may even support such a finding.  Dr. Macagno suggested

---

[14] Perl v. Meher, 18 N.Y.3d 208 (2011), relied on by plaintiff, is not
analogous, as there, the plaintiff actually carried his burden and introduced
evidence to raise an issue of fact regarding causation.  In Perl, the defendants
put forth expert evidence that the injury at issue was caused by a preexisting
degenerative condition.    Id. at 218.  Plaintiff, in turn, submitted (1) an
expert affidavit, which provided that some findings from the plaintiff's MRI
could be consistent either with degenerative disease or specific trauma and (2)
evidence from his treating physician, who explicitly considered the plaintiff's
symptoms, injuries, and medical history prior to the accident in order to
conclude that the injuries were casually related to the accident.  Id. at 219.
In this case, by contrast, plaintiff has not directed us toward any such
evidence, wherein a treating physician or expert considered his actual medical
history, including his history of back pain, as well as alternative causes of
the conditions reflected in plaintiff's Images and by plaintiff's purported
symptoms.

surgery for plaintiff that is "recommended as a treatment of Degenerative Disc Disease." Macagno Report at 4. Further, Dr. McMahon testified that plaintiff reported having back pain for ten years and that he would expect to see "some degeneration" in a 52-year-old man. McMahon Dep. at 64:23-65:11. Dr. McMahon further testified that he could not definitively rule out the possibility that the injuries in question were caused by a degenerative condition. Id. at 65:12-66:2.[15]

Where, as here, a plaintiff fails to present objective proof required to create a triable issue of fact and to rebut the defendant's evidence that his injuries were not caused by the instant accident, summary judgment is appropriate. See, e.g., Graves v. L & N Car Serv., 931 N.Y.S.2d 550, 551 (1st Dep't 2011) (dismissing complaint where defendant's expert explained that the "injuries appeared to result from chronic and degenerative conditions and were not the type of injuries that are caused by trauma," and where plaintiff's reports "said nothing about the etiology of the injuries, and the report of plaintiff's chiropractor contained only a conclusory assertion that there was a causal connection between the injuries and the accident"); Montgomery, 798 N.Y.S. 2d at 18 (granting summary judgment where

---

[15] Dr. McMahon later testified that he believes that herniation occurs as a result of some kind of force, however he clarified that a "slower speed" car accident would be "less likely" to herniate a disc. McMahon Dep. At 70:1-17. In any event, his position that herniation must result from force such as acute trauma is unsupported medically. Fischer Decl. ¶ 11.

"plaintiff failed to come forward with the objective proof required to create a triable issue as to whether her alleged injuries, even if assumed to have met the serious injury threshold, were caused by the subject motor vehicle accident.") (internal quotation marks and citation omitted).   Accordingly, we grant the Government's motion for summary judgment on the issue of causation.

### B. Motion to Exclude Expert Testimony

In addition to its summary judgment motion, the Government moves to exclude the McMahon Expert Report.  The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Id.  Rule 702 imposes on trial judges a "gatekeeping" obligation that includes the "task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597 (1993).  Even if, arguendo, plaintiff had introduced a triable issue of fact with respect to causation, we would grant summary

judgment because Dr. McMahon's Expert Report is deficient for the reasons that follow.  See Carter, 815 N.Y.S.2d at 43 (finding that "a plaintiff is required to present competent, non-conclusory expert evidence sufficient to support" findings of seriousness and causation).

First, the opinions contained in the McMahon Expert Report regarding the seriousness of plaintiff's injuries are based on an inadequate assessment of the evidence.  To start, Dr. McMahon did not personally review the 2018 or 2019 Images.  Instead, he copied diagnoses verbatim from radiology reports on the Images, without reviewing the underlying data himself.  Pl.'s Rule 56.1 ¶ 59.  As an expert may "not simply be a conduit for the opinion of an unproduced expert," this weighs in favor of excluding Dr. McMahon's testimony.  Malletier v. Dooney & Bourke, Inc., 525 F. Supp. 2d 558, 664 (S.D.N.Y. 2007).

Next, Dr. McMahon's examination of plaintiff relied primarily on subjective testing, Pl.'s Rule 56.1 ¶¶ 56-57, which calls into question the reliability of his examination.  When asked about various objective tests, many of which Dr. Fischer performed, Dr. McMahon did not dispute their benefits, but merely testified that they were not part of his routine.  See, e.g., McMahon Dep. 43:20-44:16 (explaining that he failed to perform certain tests because "it's not part of my routine to do those kind of detailed [tests]—it's more of an exam to an extent"); id. 50:15-22 (acknowledging

benefit of objective test for radiculopathy). Dr. McMahon's failure to utilize all available tests and materials is problematic, as it appears that Dr. McMahon "formed an opinion without even endeavoring to obtain and consider all the available and relevant information." Li, 2009 WL 1285928, at *7 (excluding expert testimony); see also Perkins v. Origin Medsystems, Inc., 299 F. Supp. 2d 45, 61 (D. Conn. 2004) ("[T]he expert is required to employ either standard diagnostic techniques to eliminate obvious alternative causes or, if the defendant suggests some likely alternative cause of the plaintiff's condition, the expert is required to offer a reasonable explanation why he or she still believes that the defendant's action or product was a substantial factor in bringing about the plaintiff's condition.").

Second, as is explored above at length, Dr. McMahon's opinion on causation is deficient because it is entirely conclusory. Dr. McMahon opines in a single sentence that "[t]he above diagnoses occurred as a result of the motor vehicle accident on November 10, 2018." McMahon Expert Report at 5. He draws this conclusion, however, without reference to plaintiff's ten-year history with back pain or 2012 accident, without considering any alternative causes of his condition, and without addressing the fact that disc herniation arising from acute trauma is "exceedingly rare".[16]

---

[16] While Dr. McMahon ultimately concluded that only force could cause disc herniation, McMahon Dep. 70:2-3, this position lacks medical foundation, see Fischer Decl. ¶ 11. In this respect, Dr. McMahon's position is deficient

Fischer Decl. ¶ 11.   Moreover, Dr. McMahon failed to submit a rebuttal affidavit to refute Dr. Fischer's conclusion that plaintiff's condition did arise from degeneration.   Oral Arg. Tr. at 4:15-18.   As an expert's "testimony [that] touches upon matters of causation . . . will satisfy <u>Daubert</u>'s prerequisites for reliability only if the doctor conducted a meaningful 'differential diagnosis' ruling out other possible contributing factors," <u>Munafo v. Metro. Transp. Auth.</u>, No. 00 Civ. 0134, 2003 WL 21799913, at *18 (E.D.N.Y. Jan. 22, 2003), this deficiency is reason alone to exclude Dr. McMahon's opinion with respect to causation.

Further, while Dr. McMahon testified at his deposition that he inferred causation from circumstances surrounding the accident, it appears that he made such an inference without considering the context, <u>i.e.</u>, the speed and positioning of the vehicles.   This is so notwithstanding Dr. McMahon's admission that the speed of the vehicles was relevant to the determination of causation.   McMahon Dep. 61:21-62:3.   These analytical gaps in the McMahon Expert Report weigh against its admission, as "[n]othing in either <u>Daubert</u> or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the

---

pursuant to <u>Daubert</u>, which considers the "'general acceptance' of an expert's conclusion."   <u>In re Mirena</u>, 982 F.3d 113, 124 (2d Cir. 2020).

ipse dixit of the expert." <u>Gen. Elec. Co. v. Joiner</u>, 522 U.S. 136, 146 (1997).

Ultimately, where, as here, "an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, <u>Daubert</u> and Rule 702 mandate the exclusion of that unreliable opinion testimony." <u>Amorgianos v. Nat'l R.R. Passenger Corp.</u>, 303 F.3d 256, 266 (2d Cir. 2002). Thus we grant the Government's motion to exclude Dr. McMahon's testimony. This decision provides an independent basis on which to grant summary judgment.[17]

## IV.  Conclusion

For the foregoing reasons, the Government's motion for summary judgment is granted and the Government's motion to exclude the expert testimony of Dr. McMahon is granted.[18]

---

[17] Dr. McMahon's Expert Report is deficient standing alone, even without considering Dr. McMahon's credibility. However, were we to proceed to trial, his credibility would, of course, be relevant. In that respect, we observe that Dr. McMahon's history as an expert raises issues about his credibility: Dr. McMahon performs about 400 medical examinations per year for the purpose of authoring expert reports on behalf of plaintiffs, and by his own admission, he has never declined a case owing to lack of merit. Pl.'s Rule 56.1 ¶¶ 51-52. In all of these cases, he has concluded that the plaintiff did not have an entirely good prognosis, and in 90% of them he concluded that the injury was permanent. <u>Id.</u> ¶¶ 54, 63. We are also familiar with other Courts in this District who — after hearing Dr. McMahon's testimony at trial — have concluded that Dr. McMahon's testimony is "highly suspect." <u>Cabrera v. United States</u>, No. 18 Civ. 07270, 2020 WL 5992929, at *8 (S.D.N.Y. Oct. 9, 2020), <u>appeal dismissed</u> (Feb. 18, 2021); <u>see also</u> <u>Polanco v. United States</u>, No. 19 Civ. 1409, 2020 WL 6504554, at *10 (S.D.N.Y. Nov. 5, 2020) (finding that Dr. McMahon's testimony was "not credible").

[18] In reviewing plaintiff's complaint, we observed the property damage claim, ECF No. 1 ¶¶ 31-32, which is not raised in the instant motions. However, based on our review of the papers submitted in connection with the summary judgment motion, it appears that plaintiff would face certain challenges in prevailing on this claim for property damage. For example, plaintiff approached

Dated:      New York, New York
            August 13, 2021

                                        _____
                                        NAOMI REICE BUCHWALD
                                        UNITED STATES DISTRICT JUDGE

---

the USPS truck from behind, and therefore had the best view of the situation before him; the parties agree that the USPS truck was not moving when plaintiff approached it; and plaintiff himself explained that the accident occurred when he was "squeezing through a tight spot in his vehicle causing his front passenger door to get caught on the truck's bumper."  Pl.'s Rule 56.1 ¶¶ 3-4, 19.  While these factors present obvious obstacles for plaintiff, we certainly have not reached a conclusion on this claim.  In this regard, plaintiff should notify the Court within two weeks if he will pursue the property damage claim.